LOWRY-MILLER LUMBER COMPANY, RESPONDENT, v. WILLIAM R. DEAN ET AL., DEFENDENTS, J. D. PROFFIT, APPELLANT.—29 S. W. (2d) 736.

Kansas City Court of Appeals. June 16, 1930.

*H. J. Bain* for respondent.

*O. O. Mettle* and *Lesley Robinson* for appellant.

ARNOLD, J.—Action to enforce a mechanic's lien and involving the priority of the same over two existing deeds of trust.

The facts of record are that plaintiff owns and operates lumber yards in the City of Trenton in Grundy County, Missouri, and all of the defendants are residents of that city. In July, 1926, defendants William R. Dean and Hattie E. Dean were the owners of the southwest one-half of lot 1, block 39, of the original town of Trenton, Grundy County, Missouri, in dimensions about 100x100 feet, which they had owned for a number of years. On March 29, 1923, the said owners executed two promissory notes, one for $1,000 and the other for $333.04. The $1,000 note was made payable to defendant Proffit, but was immediately transferred to Fannie E. Sweeney and was secured by a first deed of trust on the property. The second note for $333.04 was made payable to defendants Proffit and Riggs, and secured by a second deed of trust, the proceeds of this note being used to pay plaintiff herein for materials used in the construction of a barn on the premises in question.

The dwelling house on the property was a four room frame structure with a porch and a tile foundation; the house having been moved onto the lot from another location. The house was damaged by fire in July, 1926. It appears from the evidence that the house was not a complete loss; that the roof was destroyed but some of the siding and floors, while somewhat damaged, was partly capable of being used. The value of the material used in the house after the fire was estimated by witnesses from $25 to $50. There was a dispute as to whether the house could have been repaired and

estimates as to the cost of repairing the building ranged from $595.50 to $1100. The insurance on the house was $1500. A settlement with the insurance company was effected for $598 and some cents, the draft for which was turned over to defendant Proffit and by him paid out in the manner hereinafter stated.

Defendant William R. Dean, owner of the property, decided to build an entirely new building and in furtherance of this intention made arrangements with plaintiff to furnish the lumber therefor, which was done to the stated value of $1004.05. There is no dispute as to this. Therefore the old building so damaged by the fire was completely torn down and part of the debris thereof piled on the lot; all of the said material which could be used was employed in the construction of the new house which was a larger and more modern building than the old; and while part of the structure was placed on the location occupied by the old foundation which was torn down, the new building was a modern bungalow extending five or six feet farther north and the same distance farther east than the old house, and had a concrete basement and other modern improvements which the old house did not have.

The testimony shows some of the old material was used in the new house, consisting of the siding on the east end of the new house and some of the flooring in the floor of the new porch; that some of the tile from the old foundation was broken and used in the concrete for the new foundation; and that all of the material furnished by the plaintiff was used in the new structure. The testimony shows the insurance money was turned over to defendant Proffit and by him used, first, to pay an obligation to a bank to discharge a note of William R. Dean on which Proffit was surety, in the sum of $82 and the accrued interest thereon, and, second, in the payment of bills for labor certified by defendant Dean. Proffit insists that he understood and believed Dean was engaged in repairing the old structure, and that he had no knowledge that a new house was being built. But on this point Dean testified that Proffit had the information that a new house was being constructed.

Plaintiff's bill for materials was not paid and a timely mechanic's lien was filed by plaintiff which is the basis of this action. At that time Proffit was the holder of the $333 note and second deed of trust which he proceeded to foreclose. At the foreclosure sale Proffit purchased the property. He also came into possession of the first deed of trust for $1,000, and pending an action to enforce the mechanic's lien, proceeded to foreclose on that, purchasing the property under that foreclosure also.

The petition is formal and sets out the necessary allegations in support of the lien; that Fannie Sweeney, George B. Simmons, C. A. Hoover, J. D. Proffit and James T. Riggs are named as defendants

herein for the reason they are interested as mortgagees in certain deeds of trust on the property described in the petition. A separate answer consisting of a general denial was filed by Fannie Sweeney, C. A. Hoover and James T. Riggs. Defendant J. D. Proffit also filed a separate answer, alleging he is the owner and in possession of the property described in plaintiff's petition; denies that he requested plaintiff to furnish material as set out in plaintiff's petition; that he is not sufficiently informed to deny or affirm that the material furnished by plaintiff, as alleged in the petition, entered into the construction or repairs of the dwelling therein described. Each and every other allegation of the petition is generally denied.

As affirmative defense the answer states that on March 29, 1923, William R. Dean and Hattie E. Dean executed and delivered their note of $1,000 at eight per cent interest and to secure the payment thereof to defendant Proffit, executed and delivered their deed of trust on the property described in the petition, with the usual provisions as to default and foreclosure thereof; that default was made in the payment of said note and the interest thereon; that on May 2, 1927, after having duly advertised said property for sale, the trustee named in the first deed of trust sold same at public auction to defendant J. D. Proffit, and a deed therefor was duly executed; that after the property had been duly advertised and on March 26, 1927, the property was sold by the trustee named in the second deed of trust to defendant Proffit, and a deed therefor given by the trustee named therein; that during all the time the trust deeds described were prior liens to that of plaintiff, and that upon the said foreclosures and sales aforesaid, defendant Proffit became the owner in fee simple of the said property, discharged of any lien plaintiff had by reason of the materials alleged to have been furnished in the construction or repair of the dwelling on the premises.

The reply to the separate answers of defendants was a general denial. The suit to enforce the materialman's lien was instituted in the circuit court of Grundy County, Missouri, on March 12, 1927, but on change of venue was tried in the circuit court of Daviess County, to the court and jury. At the close of the evidence a demurrer was sustained as to all the defendants except William R. Dean, Hattie E. Dean and J. D. Proffit. The jury returned a verdict for plaintiff and against the defendants, the Deans and Proffit, in the sum of $1084, and judgment was entered accordingly. This judgment recited:

"Now on this 29th day of May, 1928, the same being the 18th day of the regular May term of the Daviess County Circuit Court, this cause coming on for hearing and both parties being ready for

trial and the matter in issue being submitted to a jury, duly chosen and sworn, who after hearing the evidence and testimony adduced, found the issues for the plaintiff in the sum of $1084. And they do further find that the said Lowry-Miller Lumber Co. is entitled to a mechanic's lien against defendants' property described as follows, to-wit:

"The south or southwest 1.2 of Lot 1, Block 39 of the original town of Trenton, Grundy County, Missouri.

"It is therefore ordered and adjudged by the court that the plaintiff do recover of the said defendants, William R. Dean and Hattie E. Dean, his wife, the sum of $1084 and also its costs and expenses in this behalf expended, to be levied out of the property of the said defendants and if no sufficient property of said defendants is to be found to satisfy said judgment and costs of this suit that the same be levied out of the property of said defendants charged with plaintiff's lien herein above described."

A timely motion for a new trial was overruled and defendant J. D. Proffit has appealed.

There are seven assignments of error, as follows: (1) The court erred in overruling defendant's demurrer at the close of plaintiff's case; (2) in interpreting the law governing the case and in excluding competent evidence offered by the defendant, and in admitting incompetent evidence offered by the plaintiff; (3) in giving plaintiff's instructions 1 to 7 inclusive, over defendant's objections; (4) in refusing defendant's instructions 3 to 7 inclusive; (5) in refusing to submit the case upon the theory defined in defendant's refused instructions; (6) in submitting the case to the jury, for the reason it was not shown in evidence whether the plaintiff was a partnership or a corporation; and (7) the judgment entered by the court on the verdict is erroneous in that it states plaintiff is entitled to a lien against the lot; that under no circumstances could the judgment be sustained, for the reason that the lien could not take precedence over a prior mortgage, and that all that could possibly be done would be to remove the house from the premises. Under his points and authorities appellant urges, first, the court erred in overruling defendant's demurrer at the close of plaintiff's case, for the reason that the evidence was conclusive that material from the old building was used in the construction of the new. In this connection it is argued that, at the time of the fire, the holders of the deeds of trust were entitled to all that remained of the building as part of their security, citing Orear v. Lumber Co., 188 Mo. App. 729, 731 176 S. W. 467, as follows:

"It is well-settled construction of the mechanic's lien statute in this State that a subsequent lien cannot get precedence of a prior mortgage. That while an independent structure erected after the

mortgage was given might, be subjected to a mechanic's lien and removed in a reasonable time, no such right of removal can exist against buildings on the premises when the mortgagee acquired his lien. Thus in Schulenburg v. Hayden, 146 Mo. 583, it was held that where a building is partly destroyed by fire and is restored by repair, the lien of the mechanic does not intrude itself on the mortgagee and that no right of removal can be acquired. And that was our decision in Dugan v. Scott, 37 Mo. App. 663, 670. We think this is so analogous to the point in this case as to largely determine it. [See also Elliott v. Baker, 134 Mo. App. 99; Reed v. Lamberton, 53 Mo. App. 76.]''

In the case of Schulenburg v. Hayden, referred to in the above quotation, the Supreme Court, in construing the applicable sections of the then current statutes of 1889 (sections 7218-19 and 7223, R. S. 1919) said, in effect, that if there is a mortgage on the land and the contractor, under contract with the owner of the equity of redemption, builds a new house upon the land, he has a mechanic's lien against the house, and the house may be sold and removed from the land by the purchaser, for this preserves to the mortgagee all the security he formerly had and secures, as far as possible, the payment to the contractor for his materials and work in building the house; that this is made perfectly clear in the light of section 6706, Revised Statutes 1889 (Section 7218, R. S. 1919), which confines the mechanic's lien to the right, title and interest of the owner; that section 6711, Revised Statutes 1889 (section 7223, R. S. 1919), of course, gives the mechanic's lien priority over subsequent mortgages. But where the mortgage covers the land and the house and the house is partially destroyed by fire, and the contractor reconstructs it under a contract with the owner of the equity of redemption, section 6707, Revised Statutes 1919, does not authorize the mechanic's lien to take priority over the mortgage or sale of the reconstructed house and its removal. It may be that the reconstruction of the house would enhance the security of the mortgagee, but he is not bound to rebuild the house; yet he has no power to prevent the owner of the equity of redemption from contracting with any person to reconstruct the house upon the faith of the credit of such owner because he is not entitled to foreclose until condition broken, and is not entitled to exercise dominion over the property except to prevent waste, until he acquires title at the foreclosure sale.

In the case at bar there was evidence tending to show that the mortgagor was in arrears on the payment of the interest at the time of the fire. In the Schulenburg case, l. c. 595, the court said:

''. . . but any attempt to apply such a rule to a case like this, where the old and the new have become inseparable parts of a whole

house, would necessarily lead to endless confusion, and nothing short of a sale of the whole and a division of the proceeds could possibly divide the interests of the mortgagee and of the lienor under the mechanic's lien law.''

It is noted these cases deal with reconstructed houses. The testimony here is to the effect that the owner did not reconstruct, but built an entirely new house of different dimensions, style, and not altogether on the old location. So the cited cases are not directly in point here.

It is defendant's position that because part of the material from the old house was used in constructing the new, the rule announced in the cited cases applies. Plaintiff contends to the contrary and herein lies the basis of the dispute in this case. In support of its position plaintiff cites section 7219, Revised Statutes 1919, which is, in part, as follows:

''The lien for the things aforesaid, or work, shall attach to the buildings, erections or improvements for which they were furnished or the work was done, in preference to any prior lien or encumbrance or mortgage upon the land upon which said buildings, erections, improvements or machinery have been erected or put; and any person enforcing such lien may have such buildings, erections or improvements sold under execution, and the purchaser may remove the same within a reasonable time thereafter.''

Numerous cases in support of this position are cited by plaintiff, including the Schulenburg case. In that case the house, with the prior incumbrance was only partially destroyed by fire, part of it remained on the same foundation, and the building so standing was never removed or taken off the lot, but was reconstructed as it formerly stood on the lot. Judge MARSHALL wrote the opinion, saying, l. c. 594:

''The true construction to put on section 6707, Revised Statutes 1889, is that if there is a mortgage on the *land,* and a contractor, under contract wth the owner of the equity of redemption, builds a new house upon the land, he has a mechanic's lien against the *house,* and the *house* may be sold, and may be removed from the *land* by the purchaser, for this preserves to the mortgagee all the security he formerly had, and secures, as far as possible, the payment to the contractor for the work and materials he employed in building the house.''

The same rule had been previously announced by this court in McAdow v. Sturtevant, 41 Mo. App. 220, 229. See also cases therein cited.

Under the evidence of record, the question here concerns the erection of a new house upon the mortgaged property; the former improvement having been completely removed from the site. It

must be held that the material furnished by plaintiff for the construction of the new house was no part of the security contemplated when defendant's loan was made. It follows that to give plaintiff's lien priority over the mortgage will not impair the security which defendant had prior to the construction of the new building. We had this point under consideration in Jones Lumber Co. v. Snyder, 221 Mo. App. 1227, 300 S. W. 850, 852, where we said:

"In the case at bar it appears that after the fire there was built an entirely new frame house upon the old concrete foundation. Although the incumbrances were upon the old house as well as upon the land, after the house burned the holders of the incumbrances had for their security only the land and the foundation. The agreed statement of facts recites that the 'frame part of the building was entirely destroyed.' Under such circumstances, to give plaintiffs a prior lien over the incumbrances will not impair the security which the holders had before the new dwelling was constructed, as the latter can be removed from the foundation and the premises left in the same situation as they were before it was erected. The judgment of the court merely declares a prior lien in favor of plaintiffs upon the new building erected upon the concrete foundation left after the old building was destroyed."

It is true the defendant's evidence was to the effect that he did not consent that the remains of the house should be torn down and part of the salvage used in the new construction, and plaintiff's instruction directing a verdict ignored that fact. However, if the mortgagor did these things without the mortgagee's consent, the fact remains that after the old structure was torn down then the only security the mortgagee had for his loan was the land and the salvage. When the new house was built an improvement was erected which had not theretofore existed and which added a value to the land. This being true, we think the general rule should be applied which gives priority to the liens of mechanics and materialmen upon the improvement, but not upon the land, subject to the limitations hereafter mentioned. We cannot ignore the fact that the mortgagee's lien upon the salvage was a prior lien and could not be displaced by any acts of the mortgagor and the mechanics and the materialmen without his consent. It must be held that the mortgagor had no right to contract for a lien superior to the lien upon the salvage without the consent of the mortgagee. It therefore appears that if we should hold that the liens of mechanics and materialmen upon the improvement were superior to the mortgage lien upon the salvage, we would have to hold that it was within the power of third parties to deprive the mortgagee of the priority of his lien without his consent. On the other hand, if we should hold that the first lien upon the salvage was used in the new improve-

ment made the lien of the first mortgage superior to the liens of mechanics and materialmen upon the whole improvement, this would ignore the rule that the mortgagee is not entitled to the benefit of a new improvement which was no part of his original security as against the mechanics and materialmen.

To give effect to both rules we must hold that the lien of the mortgagee upon the improvement is superior to the liens of mechanics and materialmen only to the extent of the value of the salvage that was actually used in erecting the improvement. When the mortgage was foreclosed the absolute title to the land and the improvement passed to the purchaser at the foreclosure sale subject to the prior lien of the plaintiff in so far as plaintiff's lien was entitled to priority. It was entitled to priority as against the improvement, except that part of the value thereof which is equal to the salvage upoin which a prior lien already existed. We think this is clear when we consider the fact that if the owner of land constructs a building partly out of personal property which belongs to another, equity will permit the owner of the converted property to follow it into the building and will declare a lien for its value, upon the principle that the property has been confused and mingled without the owner's consent to such an extent that separation is impossible. The defendant, under proper pleadings, would have been entitled to have the court ascertain the value of the salvage and to declare that to the extent of said value his title procured by the foreclosure of the first lien was superior to the plaintiff's lien, and, since in order to have equity one must do equity, plaintiff, as the price of his decree, within a reasonable time fixed by the court, must pay into court for the use of the defendant the amount of the ascertained value of the salvage so used in the improvement. But this would be equitable relief and none was prayed by either party, and defendant only claimed that plaintiff's lien had been entirely foreclosed. The issue just discussed was not revealed by the pleadings.

Assignment No. 6, based upon the failure of the pleadings to allege and failure of the proof to show whether plaintiff was a partnership or a corporation, has not been developed in the brief and is therefore deemed abandoned.

Finally defendant insists the judgment was erroneous and irregular for the following reasons, to-wit:

"First, demurrer was sustained as to all the defendants except William R. Dean, Hattie E. Dean and J. D. Proffit. There is no controversy but what at the time of the judgment, J. D. Proffit was the owner of the property by reason of the foreclosures. Yet the judgment went against all the defendants and adjudged a lien against the property, that is, against the ground and not against

the dwelling thereon, even if they were entitled to a lien on the dwelling.

Second, it was further ordered in the judgment that plaintiff recover of William R. Dean and Hattie E. Dean the amount of the verdict and costs, to be levied out of their property, and J. D. Proffit, the appellant, is nowhere mentioned in the judgment as the owner of the property.''

· The recorded judgment against which the objections are directed is as heretofore set out in this opinion. It is claimed that the judgment was erroneous because the plaintiff was given a prior lien ''against the property of the defendant.'' Of course, this refers to the property described in the petition, and includes the land as well as the improvement. The petition does not allege and the evidence fails to show that the mechanic's lien accrued prior to the time when the mortgage lien attached. Therefore the mechanic's lien was superior to the mortgage lien upon the improvement, at least in so far as the improvement was not constructed with materials already subject to the mortgage lien, but it was inferior to the mortgage lien upon the land. The defect in the judgment is not as to form but as to substance. There are authorities to the effect that a mere irregularity in a judgment must be saved by motion in arrest, but where the error appears upon the face of the record and is a matter of substance the court will review it although the complaining party filed no motion for new trial or in arrest of judgment. [Dysart v. Crow, 170 Mo. 275, 70 S. W. 689; State ex rel. v. Carroll, 101 Mo. App. 110, 74 S. W. 468.] In this case the face of the record shows that the petition invoked the jurisdiction of the court to foreclose a lien subject to the defendant's lien upon the land. Plaintiff obtained an entirely different judgment. The error is vital and for this reason, the judgment should be reversed and the cause remanded. It is so ordered. *Bland, J.,* concurs; *Trimble, P. J.,* absent.